**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Securities and Exchange Commission,<br><br>    Plaintiff,<br><br>vs.<br><br>Alliance Transcription Services, Inc., et al.,<br>    Defendants. | No. CV 08-1464-PHX-NVW<br><br>**ORDER** |

Before the Court is Plaintiff Securities and Exchange Commission's ("Commission") Motion for Summary Judgment (doc. #66).

**I.    Summary Judgment Standard**

Summary judgment should be granted if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for

trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II. The Commission's Statement of Facts is Deemed Admitted as to All Defendants

LRCiv 56.1 provides that a party opposing a motion for summary judgment shall file a statement that sets forth, for each paragraph of the moving party's statement, a separate numbered paragraph indicating whether the party disputes that statement and a reference to the specific admissible portion of the record supporting that party's position. An opposing party must also include in the statement any additional facts that establish a genuine issue of material fact, along with a reference to the specific admissible portion of the record where that fact finds support. *Id*. "Each numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts shall, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts." *Id*.

### A. Richard Dabney

Richard Dabney's Opposition to Motion for Summary Judgment ("Opposition") does not comply with LRCiv 56.1. Richard Dabney did not provide separate numbered paragraphs indicating which of the Commission's statements of fact he disputes, and he did not reference any admissible portion of the record in support of his assertions. He also provided no affidavits; instead, he attached a series of emails to his Opposition without explaining which emails support his contentions. "If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached or served with the affidavit." Fed. R. Civ. P. 56(e)(1). Not only has a sworn or certified copy of the emails not been provided, but the attached emails are not connected to an affidavit. The Commission's Statement of Facts, as set forth in its Local Rule 56.1 Statement, will

- 2 -

therefore be deemed admitted as to Richard Dabney for purposes of the motion for summary judgment. *See* LRCiv 56.1(a).

### B. Raymond Dabney

Raymond Dabney's Opposition to Motion for Summary Judgment appears to be an exact copy of Richard Dabney's, and consequently suffers from the same defects. It does not comply with LRCiv 56.1, and therefore the Commission's Statement of Facts will be deemed admitted as to Raymond Dabney. *See* LRCiv 56.1(a).

### C. Charles Smith

Charles Smith's Opposition also does not comply with LRCiv 56.1. Charles Smith did not provide separate numbered paragraphs indicating which of the Commission's statements of fact he disputes. Further, in his Opposition, Charles Smith did not dispute any of the Commission's facts. Instead, he took issue with the legal conclusions that should be drawn from those facts. The only "fact" that he included in his Opposition is a statement to the effect that he was provided with all of the proper documents required for Alliance securities to be "exempt." In connection with that statement, he attached a legal opinion letter from Bill O'Neil. "If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached or served with the affidavit." Fed. R. Civ. P. 56(e)(1). Not only has a sworn or certified copy of the letter not been provided, but the attached letter is not connected to an affidavit. Moreover, this "fact" does not controvert any of the Commission's numbered paragraphs. Because Charles Smith did not dispute any of the Commission's facts, these will be deemed admitted as to him. *See* LRCiv 56.1(a).

### D. Phillip Young

Phillip Young failed to respond to the Motion for Summary Judgment; therefore, the Commission's facts will be admitted as to him. *See* LRCiv 56.1(a).

## III. Section 5 Liability

Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77(a), (c), forbid the unregistered offer or sale of securities in interstate commerce.

*Sec. & Exch. Comm'n v. Phan*, 500 F.3d 895, 901 (9th Cir. 2007). To establish a prima facie violation of section 5, the plaintiff must show that (1) no registration statement was in effect as to the securities; (2) the defendant sold or offered to sell the securities; and (3) the sale or offer was made through interstate commerce. *Id*. at 902. Once the plaintiff introduces evidence that the defendant has violated the registration provisions, the burden shifts to the defendant to show that an exemption applies. *Sec. & Exch. Comm'n v. Murphy*, 626 F.2d 633, 641 (9th Cir. 1980).

Section 5 liability extends to those who are "both a necessary participant and a substantial factor in the sales transaction[s]." *Phan*, 500 F.3d at 906. The test is "whether, but for the defendant's participation, the sale transaction would not have taken place." *Murphy*, 626 F.2d at 651-52. The defendant's acts must have been more than *de minimis*. *Id*.

### A.     Richard Dabney

The first two factors of the *Phan* test are satisfied here. Alliance never filed a registration statement to sell its securities, and Richard Dabney was both a substantial factor and a necessary participant in the sale of the unregistered securities. As Managing Director of Alliance, Richard Dabney authorized the issuance of Alliance shares through official documentation. As Alliance's Treasurer, he also signed stock certificates that issued unregistered shares. Once Richard Dabney caused Alliance to issue the unregistered shares, Phillip Young, as transfer agent, would transfer the shares to Charles Smith. Phillip Young or Raymond Dabney would then inform Charles Smith how the shares should be reallocated to third parties. Both Charles Smith and Phillip Young took unregistered shares of Alliance, which they later sold into the market. Richard Dabney's participation in these transactions was substantial and necessary because he repeatedly caused Alliance to issue unregistered shares that were later sold into the market place.

Richard Dabney contends, however, that he acted in reliance upon his lawyer's advice that these transactions were subject to a section 5 exemption. However, Richard Dabney does not point to any evidence in support of his contention. "A non-movant's

bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). Moreover, Richard Dabney's reliance is irrelevant because there is no scienter requirement under section 5. *See Sec. & Exch. Comm'n v. Alpha Telecom, Inc.*, 187 F. Supp. 2d 1250, 1258 ("There is no scienter requirement under [s]ection 5."), *aff'd sub nom. Sec. & Exch. Comm'n v. Rubera*, 350 F.3d 1084 (9th Cir. 2003); *see also Sec. & Exch. Comm'n v. Softpoint, Inc.*, 958 F. Supp 846, 859 (S.D.N.Y. 1997) ("Scienter is not an element of a [s]ection 5 violation."), *aff'd* 155 F.3d 129 (2d Cir. 1998). Richard Dabney's contention is therefore unavailing.

The third *Phan* factor is also satisfied because the sale of securities was made through interstate commerce. Richard Dabney does not argue that any exemption applies. Therefore, the Commission has established that Richard Dabney violated section 5.

**B.     Raymond Dabney**

Raymond Dabney was both a substantial factor and a necessary participant in the sale of unregistered Alliance shares in violation of section 5. Raymond Dabney would instruct Charles Smith (or would instruct Phillip Young who would then instruct Charles Smith) as to how the unregistered shares issued by Alliance should be reallocated to third parties. Those shares would later be sold into the market place. Raymond Dabney's participation in these transactions was both substantial and necessary for it was he who directed how the shares should be reallocated so that they would be resold into the market place without a registration statement.

Like Richard Dabney, Raymond Dabney contends that he acted in reliance upon his lawyer's advice that the transactions were legal. Not only does Raymond Dabney not point to any evidence in support of his contention, but his reliance is irrelevant because, as already explained, there is no scienter requirement under section 5. Raymond Dabney's contention is therefore unavailing.

1    Finally, the sale of securities was made through interstate commerce. Richard Dabney does not argue that any exemption applies. Therefore, Raymond Dabney violated section 5 of the Securities Act.

### C.     Charles Smith

Charles Smith was both a substantial factor and a necessary participant in the sale of unregistered Alliance shares in violation of section 5. Charles Smith reallocated unregistered shares to third parties which were later sold into the market place. Also, Charles Smith took unregistered shares of Alliance as commissions for services rendered, and directly sold them into the market place. His participation in these transactions was therefore both substantial and necessary.

Like the Dabney's, Charles Smith contends that he relied upon the legal advice of Bill O'Neil who wrote an opinion letter stating that Alliance shares were exempt from registration requirements. Charles Smith attached a legal opinion letter from Bill O'Neil to that effect in his Opposition. The letter, however, is not accompanied by an affidavit as required by Fed. R. Civ. P. 56(e)(1); and even if the Court were to consider it, Charles Smith's contention would fail. Charles Smith does not argue that the shares were actually exempt; he argues instead that he did not know that registration was required. In other words, he argues that he lacked scienter. As noted above, however, scienter is not required to establish a violation of section 5. His reliance upon Bill O'Neil's advice is therefore irrelevant.

Finally, the sale of securities was made through interstate commerce. As Charles Smith does not argue that any exemption applies, the Commission has established that he violated section 5.

### D.     Phillip Young

Phillip Young took unregistered shares of Alliance securities as commissions for services rendered and sold them into the market place without an exemption covering the transactions. Therefore, Phillip Young violated section 5.

## IV. Liability For False and Misleading Press Releases as to Richard Dabney

Section 10(b) of the Securities Exchange Act of 1933 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, prohibit untrue statements and omissions of material fact in connection with the purchase or sale of a security. *Sec. & Exch. Comm'n v. Phen*, 97 F.3d 1276, 1289 (9th Cir. 1996). The misstatement or omission must have been made with scienter. *Id.* "To fulfill the materiality requirement there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the total mix of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988) (internal quotations omitted).

Richard Dabney made misstatements. He drafted or reviewed numerous press releases issued by Alliance that contained false or misleading information regarding Alliance's contracts, revenue, and relationship with other companies. For example, a May 11, 2005 press release represented that a contract between Alliance and Radian was worth $6 million. In reality, the contract was for an indefinite amount, the value of which was not susceptible to precise estimation because Radian was not obligated by the contract to give Alliance any work. Alliance never earned more than $1 million under the contract. Richard Dabney placed the paragraph containing the $6 million figure into the press release. The Commission has provided many other examples of press releases with misleading information. Richard Dabney was the last person to review Alliance press releases and was the person responsible for publicizing the press releases by posting them on Alliance's website.

The misstatements were material because each concerned Alliance's potential future earnings and affected investors' desire to buy or sell Alliance securities. "Material facts . . . may affect the desire of investors to buy, sell or hold [a] company's securities." *Wilson v. Great Am. Indus. Inc.*, 855 F.2d 987, 992 (2d Cir. 1988). Investors making investment choices find information regarding contracts and earning potential material. *See Sec. & Exch. Comm'n v. Poirier*, 140 F. Supp. 2d 1033, 1042-43 (D. Ariz. 2001).

Here, there is evidence that the publication of the misleading press releases affected investors' choices because the trading volume of Alliance stock increased significantly whenever the press releases were published.

Finally, the material misstatements were made with the requisite scienter. Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 (1976). It may be established by "'knowing or reckless conduct,' without a showing of 'willful intent to defraud.'" *Vernazza v. Sec. & Exch. Comm'n*, 327 F.3d 851, 860 (9th Cir. 2003) (quoting *Nelson v. Swerwold*, 576 F.2d 1332, 1337 (9th Cir. 1978)). Reckless conduct is best described as "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990) (quoting *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977)).

At a minimum, Richard Dabney acted with recklessness in publishing press releases with misleading information. Alliance employees told Richard Dabney that they were uncomfortable with the insertion of contract value estimates in the press releases because they believed that the figures would be misleading. In particular, Clifford Lewis, Alliance's President and Chief Executive Officer told Dabney not to publish information containing estimates of work that Alliance might obtain from Radian because Alliance had no guarantee that it would receive any work from Radian. Yet, Richard Dabney inserted a $6 million figure into a press release. Richard Dabney also disseminated press releases that falsely represented Alliance's relationship with other companies. For example, on June 24, 2005, Alliance issued a press release stating that Alliance was in contract talks with Vindicator Technologies that ranged in size from $1 million to $10 million. Alliance never engaged in these contract talks and there was no reasonable basis for the projected cash flow figures. The danger of misleading investors by publishing a press release with this information is evident. Because he specifically inserted and/or

reviewed and subsequently published press releases with false or misleading information, Richard Dabney was at least reckless.

In cases where intent is at issue, the court should be cautions in granting summary judgment. *Sec. & Exch. Comm'n v. Seaboard Corp.*, 677 F.2d 1289, 1295 (9th Cir. 1982). However, Commission has submitted evidence that establishes that Richard Dabney acted with recklessness in disseminating materially false information in Alliance's press releases. Richard Dabney does not dispute that evidence. Thus, summary judgment is warranted against Richard Dabney with respect to the Commission's section 10(b) and Rule 10b-5 claims.

## V. Remedies

### A. Disgorgement

A district court may exercise its equitable powers to order disgorgement of unlawful gains. *Sec. & Exch. Comm'n v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993). Disgorgement prevents unjust enrichment and is not an award of damages. *Id*.

Disgorgement is an appropriate remedy for both section 10(b) and Rule 10b-5 violations and for section 5 violations. *See Sec. & Exch. Comm'n v. M&A West, Inc.*, 538 F.3d 1043, 1054 (9th Cir. 2008) (disgorgement with interest was an appropriate remedy for defendant's violation of section 5 of the Securities Act and no assessment of scienter was required); *Sec. & Exch. Comm'n v. Goldfield Deep Mines Co.*, 758 F.2d 459, 461, 466, 468 (9th Cir. 1989) (disgorgement was an appropriate remedy for violation of section 10(b) and Rule 10b-5 of the Exchange Act). The court is not required to trace every dollar of the proceeds illegally obtained; it only needs to provide a "reasonable approximation of profits causally connected to the violation." *Sec. & Exch. Comm'n v. First Pac. Bancorp*, 142 F.3d 1186, 1192, n.6 (9th Cir 1998) (quoting *Sec. & Exch. Comm'n v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475 (9th Cir. 1996)).

#### 1. Richard Dabney

Alliance transferred funds totaling at least $315,940.74 to Richard Dabney from June 2005 through September 2006. During that time, Richard Dabney disseminated

false information about Alliance's earnings potential through numerous press releases[1] and/or engaged in section 5 violations. Disgorgement of these ill-gotten gains, along with pre-judgment interest in the amount of $87,602.41, for a total of $403,543.15, is therefore appropriate.

### 2. Raymond Dabney

Alliance transferred funds totaling at least $109,520 to Raymond Dabney from the end of July 2005 through the end of April 2006. During that time, Raymond Dabney engaged in numerous section 5 violations. These sales enabled Alliance to continue operating as a company and to pay Raymond Dabney. Disgorgement of these ill-gotten gains, along with pre-judgment interest in the amount of $33,817.10, for a total of $143,337.10, is therefore appropriate.

### 3. Charles Smith

Smith received more than 27 million unrestricted shares of Alliance stock. He obtained net proceeds of at least $148,797.72 by selling those shares into the market. Disgorgement of these ill-gotten gains, along with pre-judgment interest in the amount of $38,691.19, for a total of $187,488.91, is therefore appropriate.

### 4. Phillip Young

Young received unregistered Alliance shares as a commission for his participation in the distribution of unregistered Alliance stock. Each time, he deposited them and sold them into the market shortly afterward. Young obtained net proceeds of at least $357,276.26 when he sold Alliance stock. Disgorgement of these ill-gotten gains, along with prejudgment interest in the amount of $87,576.53, for a total of $444,852.79, is therefore appropriate.

---

[1] In fact, as early as April 26, 2005, Alliance issued a press release announcing that it had secured the $6 million dollar contract with Radian, even though it was not possible for Alliance to know or to reasonably estimate how much it would earn on any particular project. Richard Dabney added that figure to the press release.

### B. Permanent Injunction Against Violations of the Securities Laws

Permanent injunctive relief is appropriate when there is a showing that there is a reasonable likelihood that, absent an injunction, the defendant will engage in future violations. *Murphy*, 626 F.2d at 655. In predicting the likelihood of future violations, the court should consider the following factors: "the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood, because of the defendant's professional occupation, that future violations might occur; and the sincerity of his assurances against future violations." *Id*. (citations omitted).

#### 1. Richard Dabney

Richard Dabney was constantly concerned with attracting investors by means of press releases. He knew that Alliance's press releases contained materially misleading statements, but he nevertheless continued to repeatedly publish the releases on the company's website. He also exerted pressure on officers and employees at Alliance to issue press releases with misleading information. Not only did Richard Dabney violate section 10(b) and rule 10b-5, but he also repeatedly caused Alliance to issue unregistered shares for sale on the open market in violation of section 5. Richard Dabney's filings with the Court demonstrate that he has not recognized the wrongful nature of his conduct–in fact, Richard Dabney has failed to take any responsibility for issuing false press releases. He has also failed to provide any assurances whatsoever that he will not engage in future regulations violations. The *Murphy* factors therefore weigh heavily in favor of enjoining Richard Dabney from engaging in future violations of section 10(b) and rule 10b-5 of the Exchange Act, and section 5 of the Securities Act.

#### 2. Raymond Dabney

The *Murphy* factors weigh in favor of enjoining Raymond Dabney from violating section 5. *See id*. The Commission has not made a showing of scienter on Raymond Dabney's part. However, Raymond Dabney engaged in repeated section 5 violations over a period of nearly two years. Furthermore, Raymond Dabney has not acknowledged the

1 wrongful nature of his conduct. He has not provided any assurances against future
2 violations. Instead, he has expressed an interest in being involved in the future with
3 companies that issue penny stock, as did Alliance. The factors therefore weigh in favor
4 of a permanent injunction.

### 3. Charles Smith

The *Murphy* factors weigh in favor of enjoining Charles Smith from violating section 5. *See id*. The Commission has not made a showing of scienter on Charles Smith's part. However, Charles Smith engaged in repeated section 5 violations over a period of nearly two years. Furthermore, Charles Smith has not acknowledged the wrongful nature of his conduct. He has not provided any assurances against future violations. As a consultant to private companies seeking to raise capital or go public, Charles Smith's profession suggests that there may be an increased risk of future violations. On balance, the factors weigh in favor of a permanent injunction.

### 4. Phillip Young

The *Murphy* factors weigh in favor of enjoining Phillip Young from violating section 5. The Commission has not made a showing of scienter on Phillip Young's part. However, Phillip Young engaged in repeated section 5 violations over a period of nearly two years. He has not acknowledged the wrongful nature of his conduct. He has not provided any assurances against future violations. Phillip Young's professional experience also suggests an increased risk of future violations. Therefore, the factors weigh in favor of a permanent injunction.

### C. Officer and Director Bar as to Richard Dabney

A court may bar a person from serving as an officer or director of a public company if: (1) the person has violated section 10(b) of the Exchange Act, and (2) the person's conduct demonstrates unfitness to serve as an officer or director of a public company. 15 U.S.C. § 78u(d)(2). The court should consider the following factors in determining whether to issue a bar: (1) the egregiousness of the underlying securities violation; (2) the defendant's "repeat offender" status; (3) the defendant's role or

provision when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur. *First Pac. Bancorp*, 142 F.3d at 1193 (citing *Sec. & Exch. Comm'n v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).

The Commission contends that Richard Dabney should be permanently prohibited from acting as an officer and director of a public company because he repeatedly edited and approved press releases with materially false statements, and because he has not acknowledged responsibility for his conduct, suggesting that he will commit future violations if he were in a position of similar responsibility. The first, third, and fifth factors of *First Pacific Bancorp* weigh in favor of imposing the injunction. The securities violations here were serious. Richard Dabney directly participated in the violations by inserting misleading statements into press releases, reviewing and releasing misleading information, and by pressuring others to do the same. While the Commission did not directly address Richard Dabney's economic stake in the violation, the transfers made to him by Alliance constitute an economic benefit that is causally related to the violation.

However, the rest of the factors weigh against imposing a permanent officer and director bar (although not against imposing a limited officer and director bar). The Commission has not presented any evidence that Richard Dabney is a recidivist. While it is not essential for a lifetime ban that there be past violations, in the absence of such violations, a court must articulate a factual basis for a finding that there is a likelihood of recurrence. *Patel,* 61 F.3d at 142. The Commission has not submitted evidence suggesting such a likelihood. The loss of livelihood and the stigma attached to a permanent exclusion from the corporate suite generally requires that a defendant commit securities law violations with a "high degree of scienter," and that past securities law violations and the lack of assurances against future violations demonstrate that such violations are likely to continue. *Id*. Most of the evidence presented by the Commission shows that Richard Dabney was reckless, but does not necessarily show that he had a willful intent to defraud.

- 13 -

Before imposing a permanent bar, the court should consider whether a conditional bar, limited in time, might be sufficient, especially where there is no prior history of unfitness. *Id.* Thus, while a limited officer and director bar has been imposed upon a finding that a defendant acted recklessly, a permanent bar requires greater justification. *Compare Sec. & Exch. Comm'n v. Gillespie*, 2009 U.S. App. LEXIS 21861, at *5, 2009 WL 3183016, at *2 (9th Cir. Oct. 5, 2009) (upholding imposition of eight-year officer and director bar based upon district court's finding that the defendant engaged in securities violation with recklessness), *aff'g Sec. & Exch. Comm'n v. Aqua Vie Beverage Corp.*, 2008 U.S. Dist. LEXIS 35595, at *4-5, 2008 WL 1914723, at *2 (D. Idaho Apr. 29, 2008) *with First Pac. Bancorp,* 142 F.3d at 1193 (upholding permanent bar where defendant caused collapse of federally insured bank, attempted to stymie banking regulators, was a recidivist, and engaged in fraudulent conduct); *see also Patel,* 61 F.3d at 142 (suggesting a bar of five years could be sufficient where defendant had no prior history of unfitness).

Without more, the Court cannot conclude that there is a likelihood of recurrence that warrants permanently barring Richard Dabney from serving in the capacity of an officer or director in a public company. However, a limited bar is appropriate. Richard Dabney was reckless, engaged in multiple violations, and has not provided assurances that misconduct will not occur in the future. *See id.* Other courts have imposed five to ten-year bars in similar circumstances. *See, e.g., Sec. & Exch. Comm'n v. Hilsenrath*, 2009 U.S. Dist. LEXIS 58930, at *11, 2009 WL 1855283, at *4 (N.D. Cal. June 26, 2009) (five-year bar imposed where defendant had engaged in a serious violation, had "sufficient" degree of scienter, made no reliable assurances against future violations, engaged in repeated violations, although was not necessarily a recidivist); *Aqua Vie Beverage Corp.*, 2008 U.S. Dist. LEXIS 35595, at *5, 2008 WL 1914723, at *2 (imposing eight-year officer and director bar where defendant's conduct was at least reckless and defendant had not yet acknowledged the wrongfulness of his conduct). The Court will therefore impose a five-year officer and director bar.

### D. Penny Stock Bar

A court may enter an order prohibiting a party from participating in a penny stock offering against anyone who participated in such an offering. 15 U.S.C. § 78u(d)(6)(A). "When deciding to impose such a bar, the court looks at essentially the same factors that govern the imposition of an officer or director bar." *Sec. & Exch. Comm'n v. Steadman*, 603 F.2d 1126, 1140 (5th Cir. 1979). The factors are: (1) the egregiousness of the underlying securities violation; (2) the defendant's "repeat offender" status; (3) the defendant's role or provision when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur. *First Pac. Bancorp*, 142 F.3d at 1193 (citing *Sec. & Exch. Comm'n v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).

#### 1. Richard Dabney

In light of the Court's imposition of an officer and director bar against Richard Dabney, the Court will also impose a five-year penny stock bar.

#### 2. Raymond Dabney

A penny stock bar against Raymond Dabney is not warranted. The first, third, and fifth *First Pacific Bancorp* factors do weigh in favor of an injunction because the section 5 violations were serious, taking place over a period of two years; Raymond Dabney personally benefitted from the violations; and he was a direct participant in the offending transactions. However, the rest of the factors weigh against imposing an injunction. As with officer and director bars, courts generally place great weight upon whether the defendant acted with scienter when deciding whether a penny stock bar is appropriate.[2] Raymond Dabney was not shown to have acted with scienter. The Commission has also not shown that Raymond Dabney is a "repeat offender." The Commission tried to show

---

[2] Courts consider the same factors when deciding whether to impose officer and director bars and whether to impose a penny stock bar. *See Steadman*, 603 F.2d at 1140. As explained above, even a limited officer and director bars requires some degree of scienter. It follows that scienter is also required in order to impose a penny stock bar.

- 15 -

recidivism by referring to prior disciplinary action taken against Raymond Dabney by the British Columbia Securities Division for violations of Canadian securities laws. However, the Court will not consider this evidence. Under the federal securities laws, a district court may grant an injunction sought by the Commission in securities cases where "at least some activity designed to further a fraudulent scheme occurs within this country." *Sec. & Exch. Comm'n v. Kasser*, 548 F.2d 109, 114 (3d Cir. 1977). *See also*, *Grunenthal GmbH v. Hotz*, 712 F.2d 421, 424-26 (9th Cir. 1983) (requiring material conduct or effects in the United States for a court to exercise jurisdiction under the federal securities laws). The Commission, however, has made no showing that the conduct for which Raymond Dabney was disciplined has any connection whatsoever to the United States. The Commission has also submitted no evidence that Raymond Dabney has engaged in prior violations of United States securities laws. Therefore, the Commission has not made a showing that Raymond Dabney is a "repeat offender" for purposes of deciding whether a penny stock bar should issue. Finally, the Commission has not made a showing that future violations are likely. The Court therefore will not impose a penny stock bar.

### 3. **Charles Smith and Phillip Young**

As with Raymond Dabney, the Commission has not made a showing that Charles Smith or Phillip Young acted with scienter. The Commission has also made no showing that Charles Smith or Phillip Young are "repeat offenders," and therefore it is unclear whether future violations are likely. Consequently, the Court will not impose a penny stock bar against Charles Smith or Phillip Young.

### E. **Civil Monetary Penalties**

Section 20(d)(2) of the Securities Act and section 21(d)(3) of the Exchange Act authorize a court to impose civil penalties against a party for violating any provision of the statute or rules enacted thereunder. 15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3). Third tier penalties are available only where the securities law violation "involved fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement [and]

such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial loss to other persons." 15 U.S.C. § 77t(d)(2)(C). Second tier penalties are available where the securities law violation "involved fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 77t(d)(2)(B). First tier penalties are available for securities laws violations that do not require fraud. *See* 15 U.S.C. § 77t(d)(1)-(2)(A).

The Commission has not offered any suggestion as to what amount would be an appropriate penalty or the justification for that amount. Therefore, the Court will ask the Commission to provide further briefing, as to each defendant, concerning appropriate penalties and the justification for any amounts proposed by the Commission.

## VI. Defendant Clifford Lewis

While not the subject of the Commission's Motion for Summary Judgment, default has been entered against Defendant Clifford Lewis and, in order to terminate this case, judgment must be entered against him. In its Motion for Entry of Default (doc. ##56, 57) the Commission did not request remedies. The Commission has not yet sought entry of default judgment against Defendant Lewis pursuant to Fed. R. Civ. P. 55(b)(2), nor has it provided a Proposed Final Judgment as to him.

IT IS THEREFORE ORDERED that the Commission's Motion for Summary Judgment (doc. #66) is granted.

IT IS FURTHER ORDERED that the Commission provide further briefing by January 16, 2010, regarding the amount of civil penalties that should be assessed against Richard Dabney, Raymond Dabney, Charles Smith, and Phillip Young and the justification for any amounts proposed by the Commission. Defendants will then have until January 30, 2010, to respond.

/ / /

IT IS FURTHER ORDERED that the Commission file a motion for entry of default judgment and submit a Proposed Final Judgment as to Defendant Clifford Lewis by January 16, 2010.

DATED: this 18th day of December, 2009.

_____
Neil V. Wake
United States District Judge