**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Securities and Exchange Commission, | No. CV 08-1464-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Alliance Transcription Services, Inc., et al., | |
| Defendants. | |

Before the Court is Plaintiff Securities and Exchange Commission's ("Commission") Motion for Reconsideration Re Denial of Imposition of Penny Stock Bar Against Raymond Dabney (doc. #93) and Defendant Richard Dabney's Motion for Reconsideration (doc. #97). The Court previously granted the Commission's Motion for Summary Judgment and asked the Commission to provide further briefing regarding the amount of civil penalties that should be assessed against Richard Dabney, Raymond Dabney, Charles Smith, and Phillip Young, and the justification for any amounts proposed by the Commission. (Doc. #91.) The Court grants the Commission's request for civil penalties in all respects and denies both motions for reconsideration.

**I.  Civil Penalties**

Section 20(d)(2) of the Securities Act of 1933 ("Securities Act") and section 21(d)(3) of the Securities Exchange Act of 1934 ("Exchange Act") authorize a court to impose civil penalties against a party for violating any provision of the statute or rules enacted thereunder. 15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3). Third tier penalties are

available where the securities law violation "involved fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement [and] such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial loss to other persons." 15 U.S.C. § 77t(d)(2)(C). Second tier penalties are available where the securities law violation "involved fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 77t(d)(2)(B). First tier penalties are available for securities laws violations that did not involve fraud. *See* 15 U.S.C. § 77t(d)(1)-(2)(A).

### 1. Richard Dabney

The imposition of a third tier penalty against Richard Dabney is justified. The Court previously found that Richard Dabney violated section 10(b) of the Exchange Act and rule 10b-5 promulgated thereunder. Richard Dabney acted at a minimum with reckless disregard of a regulatory requirement when he disseminated press releases containing materially false information. The Commission submitted evidence that the press releases either resulted in losses or created a substantial risk of loss to investors. For example, on April 26, 2005, the day Alliance announced that it had a $6 million dollar contract with Radian, the trading volume of Alliance's stock increased almost tenfold and its stock price increased forty-seven percent. Investors who relied on false press releases that stated that Alliance had contracts and sources of revenue that it did not have risked substantial losses because those contracts and sources of revenue did not exist. Richard Dabney has not taken responsibility for his wrongdoing nor has he given the Court any other reason for not imposing civil penalties. Accordingly, the Court will assess third tier civil penalties against Richard Dabney for his section 10(b) and rule 10b-5 violations.[1]

---

[1] The third tier penalty maximum was increased from $100,000 to $130,000 for violations occurring after February 15, 2005. 17 C.F.R. § 201.1003. Richard Dabney's violations of section 10(b) and rule 10b-5 took place after February 15, 2005.

- 2 -

Courts calculate third tier penalties in two ways. The first is to impose a per-violation penalty by multiplying a defendant's violations by a dollar amount. *Sec. & Exch. Comm'n v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1192 (D. Nev. 2009). In cases where the number of violations is difficult to discern or where assessing a per-violation penalty would be excessive, as is the case here,[2] courts have imposed a flat penalty equal to the defendant's gross pecuniary gain, which is generally the same as the disgorgement amount imposed for the violations. *Id*. at 1193.

The Commission has asked for a one-time third tier penalty in the amount of $130,000, which is lower than both the maximum penalty per violation that could be assessed ($910,000) and the disgorgement amount ($315,940.74), and is reasonable under the circumstances. The Court will therefore assess a one-time third tier penalty in the amount of $130,000.

### 2. Raymond Dabney, Charles Smith, and Phillip Young

The Court previously found that defendants Raymond Dabney, Charles Smith, and Phillip Young violated section 5 of the Securities Act, and the Court will assess first tier civil penalties against each. The Commission submitted evidence that these defendants were directly involved in the sale of unregistered securities at least fifteen times. The first tier penalty is $6,500.00 per each violation occurring after February 14, 2005. 17 C.F.R. § 201.1003. Therefore, a penalty of up to $97,500 ($6,500 * 15) would be appropriate as to each defendant. The Commission has only requested a $50,000 penalty per defendant in light of the amounts it obtained through settlement with other defendants in this action and in light of other settled cases that are comparable. The Court will therefore grant the

---

[2]The evidence established that there were at least seven misleading press releases issued in 2005 for which Dabney was responsible. If the maximum penalty per violation were assessed, this would result in a $910,000 total penalty. This amount is excessive because, not only does it greatly exceed the total amount Richard Dabney obtained from Alliance (by nearly a multiple of three), but would penalize him equally for the publication of all of the press releases, although the evidence suggests that he may have actually inserted false information in some releases and simply approved the publication of others.

1 Commission's request for a $50,000 penalty against Raymond Dabney, Charles Smith, and Phillip Young.

## II. Motions for Reconsideration

### A. Standard

"The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g)(1).

### B. Reconsideration of Denial of Penny Stock Bar as to Defendant Raymond Dabney

A court may enter an order prohibiting a party from participating in a penny stock offering against "any person participating in, or, at the time of the alleged misconduct who was participating in, an offering of penny stock." 15 U.S.C. § 78u(d)(6)(A). When deciding to impose such a bar, the court looks at essentially the same factors that govern the imposition of an officer or director bar. *Steadman v. Sec. & Exch. Comm'n*, 603 F.2d 1126, 1140 (5th Cir. 1979). The factors are: (1) the egregiousness of the underlying securities violation; (2) the defendant's "repeat offender" status; (3) the defendant's role or provision when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur.[3] *First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 2003) (citing *Sec. & Exch. Comm'n v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).

The Court previously found that a penny stock bar against Raymond Dabney was not warranted. The first, third, and fifth *First Pacific Bancorp* factors weighed in favor of a bar because Raymond Dabney's section 5 violations were serious, taking place over a period of two years; he personally benefitted from the violations; and he was a direct participant in the offending transactions. However, the second, fourth, and sixth factors

---

[3]The Commission contends in a footnote that because the 15 U.S.C. § 78u(d)(6) penny stock bar at issue here does not contain the "public interest" language contained in the 15 U.S.C. § 78o(b)(6) penny stock bar that the court interpreted in *Steadman*,

weighed against imposing an injunction. The Commission did not show that Raymond Dabney was a repeat offender; it only noted that he had been previously disciplined by the British Columbia Securities Commission. The Commission did not charge Raymond Dabney with a securities violation that required scienter. And, the Commission did not show that there was a likelihood that misconduct would recur. The Commission now asks the Court to reconsider its finding that the second, fourth, and sixth factors weighed against imposing an injunction.

### 1. Repeat Offender Status

The Court previously decided not to consider the prior disciplinary action taken by the British Columbia Securities Commission against Raymond Dabney in deciding whether he was a "repeat offender" for purposes of the second *First Pacific Bancorp* factor. On November 15, 2005, Raymond Dabney entered into a settlement agreement with the British Columbia Securities Commission that prohibited him from engaging in

---

[3] (continued) at least one court has ordered a penny stock bar based solely on wrongful conduct associated with a penny stock offering and the likelihood of future violations. *See Sec. & Exch. Comm'n v. Converge Global, Inc.*, No. 04-80841-CIV-MIDDLEBROOKS/JOHNSON, 2006 WL 907567, at *4-5, 2006 U.S. Dist. LEXIS 17581, at *11-15 (S.D. Fla. Mar. 10, 2006). However, *Converge Global* makes no mention of the differences between the two provisions cited by the Commission. *See id.* In addition, in *Converge Global*, the court enjoined the defendant from violating section 10(B) and rule 10b-5 based upon the defendant's "history of infractions," the degree of scienter involved, the egregiousness of his conduct, his failure to recognize the wrongful nature of his conduct, and his questionable assurances against future violations. *Id.* The court then also issued a penny stock bar based upon the defendant's "misconduct in this case," his long career and experience in the financial services industry, and the likelihood of future violations. *Id.* Thus, although *Steadman* was not specifically mentioned, the court's ruling is consistent with the application of the *Steadman* factors. Moreover, a number of district courts within the Ninth Circuit have applied the *Steadman* factors in considering whether to issue a penny stock bar under 15 U.S.C. § 78u(d)(6). *See, e.g., Sec. & Exch. Comm'n v. Aqua Vie Beverage Corp.*, 2008 WL 1914723, at *2, 2008 U.S. Dist. LEXIS 35595, at *4 (D. Idaho Apr. 29, 2008); *Sec. & Exch. Comm'n v. Abellan*, _ F. Supp. 2d _, 2009 WL 4730796, at *9, 2009 U.S. Dist. LEXIS 113450, at *24 (W.D. Wash. Dec. 7, 2009). *See also Sec. & Exch. Comm'n v. Universal Express, Inc.,* 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007) (applying *Steadman* to determine whether a penny stock bar should issue under 15 U.S.C. § 77t(g), which contains essentially the same language as 15 U.S.C. § 78u(d)(6)).

investor relations activities for five years because he issued false press releases in connection with his company, XRAYMEDIA, Inc. Under *Grunenthal GmbH v. Hotz*, 712 F.2d 421, 424-26 (9th Cir. 1983), for a court to exercise jurisdiction under the federal securities laws, the court must find that the defendant's conduct in the United States was significant with respect to the alleged violation. With no authority directly on point, and in light of the Commission's failure to show that the conduct had any connection to the United States, the Court likewise declined to consider Raymond Dabney's conduct in British Columbia for purposes of deciding whether an injunction should issue.

The Commission argues that federal securities laws have recognized that conduct abroad may be used to bar individuals from certain roles in U.S. securities markets because that conduct makes them unfit to fulfill those roles. The Commission cites 15 U.S.C. § 78o(b)(6)(A)(ii), which gives the Commission authority to bar a person from associating with a broker dealer if he has been convicted of a securities related crime by a "foreign court of competent jurisdiction" in support of this proposition. The Commission, however, does not cite to any statutory provision that purports to give courts such authority. Moreover, the statutory provision cited by the Commission suggests that the threshold for grounding disciplinary action in the United States on violations of foreign securities laws is high. The Commission has authority to bar a person who has been *convicted of a crime* by a *foreign court of competent jurisdiction*. Here, in contrast, Raymond Dabney entered into a settlement agreement with respect to a civil offense with the British Columbia Securities Commission.

The Commission nevertheless argues that at least one court considered violations of the securities laws of another country to determine whether a defendant was a "repeat offender" for purposes of deciding whether an injunction should issue. In *SEC v. Save the World Air, Inc.*, No. 01 Civ. 11586 (GBD)(FM), 2005 WL 3077514, at *16, 2005 U.S. Dist. LEXIS 28313, at *50 (S.D.N.Y. Nov. 15, 2005), the court imposed an officer and director bar because the Commission submitted "overwhelming evidence" that the defendant's transgressions could not be dismissed as an isolated event. The court noted

that the defendant had previously been cited in Australia for selling unregistered securities, and then went on to describe multiple instances of serious violations of U.S. securities laws involving fraud. *Id.* at *16-17, 2005 U.S. Dist. LEXIS 28313, at *49-51. The court explained, that before imposing a permanent bar, it was required to consider whether a bar limited in time might be sufficient, "especially where there [was] no prior history of unfitness." *Id.* The court specifically refused to impose a permanent officer and director bar, imposing instead a twenty-year bar, because "[the defendant's] base of operations [was] in another country, and this case mark[ed] the first time he ha[d] been accused of wrongdoing in the United States." *Id.* It is therefore unclear whether the court placed much, if any, weight on the defendant's foreign law violations in deciding whether to grant an injunction.

The Commission contends that even if it must demonstrate conduct and effect in the United States it can do so because Raymond Dabney's prior company, XRAYMEDIA, Inc., was incorporated in the United States and listed as a bulletin board stock, and Raymond Dabney used a U.S. attorney to review false press releases prior to their issuance–suggesting that he was concerned that his company comply with U.S. securities laws because U.S. citizens might read the press releases and invest. However, the Commission has not attempted to show that any of the false press releases issued by XRAYMEDIA, Inc., were disseminated in the United States or that U.S. investors were affected in any way.

Finally, the Commission argues that Raymond Dabney is a repeat offender because, although the Commission did not charge him with fraudulent conduct, he nevertheless reviewed all of the false press releases issued by Alliance and provided advice to Richard Dabney. The Commission, however, only charged Raymond Dabney with section 5 violations for selling unregistered securities and not with a violation premised upon his alleged involvement in a scheme to issue false press releases. In fact, there is not a single allegation in the Commission's Memorandum in Support of Plaintiff's Motion for Summary Judgment (doc. #67) charging Raymond Dabney with

participating in such a scheme. The Commission's Local Rule 56.1 Statement (doc. #68) does state that Raymond Dabney reviewed false press releases issued by Alliance. However, because he was not charged with violations premised upon the review of those releases, Raymond Dabney may not have had the motivation to respond to those allegations.

In light of the foregoing, the Court did not commit "manifest error" in finding that the second *First Pacific Bancorp* factor weighed against imposing a penny stock bar.

### 2. Degree of Scienter Involved

As with officer and director bars, courts generally place great weight upon whether the defendant acted with scienter in deciding whether a penny stock bar is appropriate.[4] The Commission contends that there is strong evidence of scienter because Raymond Dabney orchestrated the offering of unregistered securities and reviewed misleading Alliance press releases before they were released. The reality is, however, that the Commission did not charge Raymond Dabney with an offense that requires scienter. Consequently, the Commission did not attempt to show that Raymond Dabney acted with scienter. In fact, in its Reply Brief in Support of Summary Judgment Against Richard Dabney and Raymond Dabney (doc. #78), the Commission stated that the only defense that Raymond Dabney raised was that his lawyer gave him advice as to how to structure the sale of the unregistered securities. The Commission then went on to say that even assuming, *arguendo,* that Raymond Dabney's lawyer did provide such legal advice, such advice was irrelevant for liability pursuant to section 5 *because the Commission need not demonstrate scienter for liability to attach.* (Doc. #78.) Having explicitly refused to provide evidence of scienter, the Commission cannot now ask the Court to find that Raymond Dabney acted with scienter for purposes of deciding whether an injunction

---

[4] Courts consider the same factors when deciding whether to impose officer and director bars and whether to impose a penny stock bar. *See Steadman*, 603 F.2d at 1140. As explained above, even a limited officer and director bars requires some degree of scienter. It follows that scienter is also required in order to impose a penny stock bar.

- 8 -

should issue. The Court therefore did not commit "manifest error" in finding that the fourth *First Pacific Bancorp* factor weighed against a penny stock bar.

### 3. Likelihood that Misconduct will Recur

Finally, the Commission argues that it is likely that misconduct will recur. Prior misconduct is the best indicator of future misconduct. *See Patel*, 61 F.3d at 141. However, as explained, the Commission's evidence of prior misconduct is shaky. On the other hand, misconduct is more likely to occur if the defendant has not accepted responsibility for the conduct at issue, and Raymond Dabney has not accepted responsibility for his acts. *See id.* This factor therefore does not weigh in favor of either the Commission or Raymond Dabney.

The Commission has not shown that the Court committed "manifest error" in finding that the second, fourth, and sixth *First Pacific Bancorp* factors weighed against imposing a penny stock bar, nor that there are new facts or legal authority in support of the Commission's claims that could not have been brought to the Court's attention with reasonable diligence. *See* LRCiv 7.2(g)(1). Therefore, the Court will deny the Commission's request to reconsider its denial of a penny stock bar against Raymond Dabney.

### C. Reconsideration of Monetary Penalties, Penny Stock, and Officer and Director Bar as to Defendant Richard Dabney

Richard Dabney also moves the Court to reconsider, essentially, its entire order granting summary judgment for the Commission. LRCiv 7.2(g)(1) requires the party filing a motion for reconsideration to "point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's order."

### 1. False Press Releases

Richard Dabney continues to assert that he is not responsible for the misleading press releases issued by Alliance. However, Richard Dabney simply repeats what he said

1 in his initial Opposition to Motion for Summary Judgment (doc. #76). No new facts or legal authority are cited. Although Richard Dabney argues that the Commission misrepresented facts to the Court, Richard Dabney did not controvert the Commission's initial Statement of Facts in Support of Plaintiff's Motion for Summary Judgment as required by LRCiv 56.1(b). The Commission's facts were therefore deemed admitted. Richard Dabney had an opportunity to rebut the Commission's facts in his Opposition and did not do so. He cannot now attempt to raise a genuine issue of material fact.

### 2. Computation of Disgorgement Amounts

Richard Dabney also contends that the Commission miscalculated the amounts it sought to disgorge from him and that the Court erred in ordering those amounts to be disgorged. Richard Dabney asserts that the moneys that were transferred from Alliance to his personal accounts were used to pay Alliance employees and not to line his pockets. However, Richard Dabney only makes bald assertions–he does not point to any evidence in the record or otherwise that supports his allegations. Moreover, he does not explain why he did not challenge the Commission's calculations in his Opposition to Motion for Summary Judgment.

Richard Dabney has not shown that the Court committed "manifest error" nor that there are new facts or legal authority in support of his claims that could not have been brought to the Court's attention with reasonable diligence as required by LRCiv 7.2(g)(1). Therefore, the Court will deny his Motion for Reconsideration.

IT IS THEREFORE ORDERED that the Commission's Motion for Reconsideration (doc. #93) is denied.

IT IS FURTHER ORDERED that Defendant Richard Dabney's Motion for Reconsideration (doc. #97) is denied. The Clerk shall terminate this action.

DATED this 8th day of February, 2010.

_____
Neil V. Wake
United States District Judge